Filed 11/20/14  Rosolowski v. Bosley Medical Group CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GREG ROSOLOWSKI et al., | B252278 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC499040) |
| v. | |
| BOSLEY MEDICAL GROUP, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elihu M. Berle, Judge.  Affirmed.

Law Offices of Morse Mehrban and Morse Mehrban for Plaintiffs and Appellants.

Doll Amir & Eley, Michael M. Amir and Johari N. Townes for Defendant and Respondent.

————————————————

Plaintiffs and appellants Greg Rosolowski et al. (collectively, Plaintiffs)[1] appeal a judgment of dismissal following an order sustaining a demurrer interposed by defendant and respondent Bosley Medical Group, A Medical Corporation (Bosley), to Rosolowski's first amended complaint without leave to amend.

The essential issue presented is whether Plaintiffs stated a cause of action for violation of Business and Professions Code section 17529.5,[2] on the theory that Bosley sent them unsolicited commercial email advertisements purporting to be from "hair loss solution", "hair loss solution@yahoo.com", "hair restoration", "RestoreYourHair" and "restore your hair", which are not names or registered fictitious business names of existing entities, and are not traceable to Bosley via a WHOIS database search.[3]

---

[1]    In addition to Greg Rosolowski, the plaintiffs and appellants are:  Mark Rosolowski, Blanca Ayala, Victor Saucedo, Mark Bates, Jose Estrada, Jimmy Jaramillo, Mark Lewis, Gwen Aparente, Rustom A. Aparente, Jr., Heriberto Parada, Alfredo Garcia, Sr., Shawn Monroe, Luis Marquez, Herbert Henry, Jennifer Rodman, Miriah Rodman, Mary Ramirez, Cindy Rodman, Francisco Duarte, Angel Estrada, Irelia Marquez, Luis Alberto Perez, Nina Zamora, Michelle Balansag, Erlinda Salonga, Vanessa Vasquez, Celia Ruiz, Amy Palomino, Georgia Anderson, Brian Anderson, Shontae Dunn, Alfredo Garcia, Jr., Nadine Balansag, Jeremy Balansag, Franz Balansag, Roxanne Balansag, Jessica Lindsay, John Lindsay, Miguel Martinez, Julie Westfall, Matt Boyster, Michael Matienzo, Barbara Matienzo and Esperanza Matienzo.

[2]    Business and Professions Code section 17529.5 states in relevant part at subdivision (a):  "It is unlawful for any person or entity to advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address under any of the following circumstances:  [¶]  (1)  . . . [¶]  (2) *The e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged header information.*  This paragraph does not apply to truthful information used by a third party who has been lawfully authorized by the advertiser to use that information."  (Italics added.)

Unless otherwise specified, all further statutory references are to the Business and Professions Code.

[3]    WHOIS "is a publically available online database through which users can access information regarding domains, including the registrant's name, address, phone number, and e-mail address.  See Definitions, Implementation, and Reporting Requirements

2

We conclude no cause of action was stated for violation of section 17529.5, subdivision (a)(2) (misrepresented header information) and affirm the judgment of dismissal. We hold a header line in a commercial email advertisement does not misrepresent the identity of the sender merely because it does not identify the official name of the entity which sent the email, or merely because it does not identify an entity whose domain name is traceable from an online database, provided the sender's identity is readily ascertainable from the body of email, as was the case here.[4]

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Pleadings*.

The gravamen of the allegations in the operative first amended complaint is that Bosley sent Plaintiffs unsolicited commercial email advertisements which, instead of identifying the sender as Bosley, indicated the sender was "hair loss solution", "hair loss solution@yahoo.com", "hair restoration", "RestoreYourHair" or "restore your hair", which are not names or registered fictitious business names of existing entities, and are not traceable to Bosley via a WHOIS search.

The first amended complaint was filed on behalf of lead plaintiff Greg Rosolowski and 44 individual coplaintiffs, who collectively sought to be class representatives to represent a larger class. Copies of five of the allegedly offending emails were attached as

Under the CAN–SPAM Act, 70 Fed.Reg. 25,426, 25,446 n.233 (proposed May 12, 2005) (to be codified at 16 C.F.R pt. 316). WHOIS data is compiled by registrars from information submitted by registrants." (*Gordon v. Virtumundo, Inc.* (9th Cir. 2009) 575 F.3d 1040, 1064, fn. 22.)

[4] "California statutes do not define either the word 'header' or the phrase 'header information.' [However,] the federal CAN–SPAM Act, which makes it unlawful to initiate transmission of a commercial e-mail message that contains or is accompanied by 'header information that is materially false or materially misleading' (15 U.S.C. § 7704(a)(1)), defines 'header information' as 'the source, destination, and routing information attached to an electronic mail message, including the originating domain name and originating electronic mail address, and any other information that appears in the line identifying, or purporting to identify, a person initiating the message' (15 U.S.C. § 7702(8))." (*Kleffman v. Vonage Holdings Corp*. (2010) 49 Ca1.4th 334, 340, fn. 5 (*Kleffman*).)

3

exhibits to the pleading. For example, Exhibit A was an email "From: Hair loss Solution@yahoo.com (Hair loss Solution@yahoo.com)."

2. *Demurrer*.

Bosley demurred, contending Plaintiffs' claims, brought pursuant to section 17529.5, should be dismissed because they were preempted by federal law, specifically, the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (15 U.S.C. § 7701 et seq.) (the CAN-SPAM Act).

Bosley further argued Plaintiffs failed to allege the emails at issue actually contained false or misleading header information; Plaintiffs merely alleged the header information was not traceable to Bosley via a WHOIS database search. However, the recipients of the emails at issue would have "absolutely no doubt that the emails were sent on behalf of Bosley and that they advertise Bosley's services. Because the recipients of these emails would be able to readily determine that the emails advertise Bosley's products and services, there is nothing in the content of these emails that is misleading."

3. *Opposition to demurrer*.

In opposition, Plaintiffs argued the emails violated section 17529.5, subdivision (a)(2), in that the names appearing on the "from" lines refer to nonexistent entities and the names could not be traced to Bosley by way of an online database such as WHOIS.

Plaintiffs further contended their claims were not preempted by the federal CAN-SPAM Act due to material deception in the header line, which concealed the identity of the actual sender, namely Bosley.

4. *Trial court's ruling*.

On August 6, 2013, the matter came on for hearing. The trial court sustained Bosley's demurrer to the first amended complaint without leave to amend, stating in pertinent part:

"Bosley . . . asserts that Plaintiffs' claims are preempted by the Federal CAN-SPAM Act. . . . However, where, as Plaintiffs here allege, an unsolicited commercial email employs a materially deceptive header, it may be actionable under § 17529.5.

4

[Citation.] Accordingly, this is not an appropriate basis upon which to sustain Bosley's demurer.

"Under *Balsam v. Trancos* [(2012) 203 Cal.App.4th 1083 (*Balsam*)], upon which Plaintiffs rely, header information is falsified or misrepresented for purposes of Section 17529.5(a) when it 'uses a sender domain name that *neither* identifies the actual sender on its face *nor* is readily traceable to the sender using a publicly available online database.' . . . Here, the recipient of the emails in question would not even need to use a publicly available online database to determine who sent the emails because the name Bosley, the entity whose products and services are being advertised, appears prominently in the body of the emails in question. Because a recipient could determine the identity of the sender by merely opening the email in question, there is nothing deceptive about the header itself. Accordingly, Plaintiffs have not stated a cause of action under §17529.5. Further, the from names in the email headers that Plaintiffs allege are unlawful ('hair loss solution@yahoo.com', 'hair restoration', 'RestoreYourHair', and 'restore your hair') accurately describe the services offered [for] sale in the email advertisements by [Bosley]. Because the headers accurately reflect the content of the emails, the headers are not actionable under § 17529.5. . . . "

"Plaintiffs' counsel acknowledged at the hearing on this matter that if given an opportunity to amend the First Amended Complaint, he could not state additional facts that would avoid the impact of this ruling. Accordingly, Bosley's demurrer is [sustained without leave to amend]."

This timely appeal followed.

## CONTENTIONS

Plaintiffs contend the operative first amended complaint stated facts sufficient to state causes of action against Bosley for violation of section 17529.5, subdivision (a)(2) (misrepresented header information), and their claims are not preempted by federal law.

**DISCUSSION**

1. *Standard of appellate review.*

In determining whether a plaintiff has properly stated a claim for relief, "our standard of review is clear: ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citations.]" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126, italics added.) Our review is de novo. (*Ibid.*)

2. *Overview of section 17529.5 and the CAN–SPAM Act.*

   a. *Section 17529.5.*

In 2003, "the California Legislature passed Senate Bill 186, which imposed broad restrictions on advertising in unsolicited commercial e-mail advertisements sent from or to a computer within California. [Citation.] According to the Legislature's 'findings and declarations,' the bill was adopted to address the 'skyrocket[ing]' costs and 'annoyance[s]' associated with 'spam,' which the statute defines as 'unsolicited commercial e-mail advertisements.' [Citations.] The Legislature concluded that, to effectively regulate the abuses associated with spam, it was necessary to target not only the entities that send unsolicited commercial e-mail advertisements, but also the advertisers whose products and services are promoted in those e-mails." (*Hypertouch, Inc. v. Valueclick, Inc.* (2011) 192 Cal.App.4th 805, 818.)

Section 17529.5 prohibits certain deceptive practices in commercial email and states in pertinent part:

"(a) It is unlawful for any person or entity to advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address under any of the following circumstances: [¶] (1) The e-mail advertisement contains or is accompanied by a third-party's domain name without the permission of the third party. [¶] (2) The e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged *header information*." (Italics added.)

Section 17529.5, subdivision (b), in turn, contains an enforcement provision that permits the "Attorney General," "an electronic mail service provider" or "a recipient of an unsolicited commercial e-mail advertisement" to "bring an action against a person or entity that violates any provision of this section." (§ 17529.5, subds. (b)(1)(A)(i)-(iii).)

Section 17529.5, subdivision (b) also lists the remedies available under the statute, which include "either or both of the following: [¶] (i.) Actual damages. [¶] (ii.) Liquidated damages of one thousand dollars ($1,000) for each unsolicited commercial e-mail advertisement transmitted in violation of this section, up to one million dollars ($1,000,000) per incident." (§ 17529.5, subd. (b)(1)(B).) The statute further provides, however, that if the court finds the "defendant established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of this section, the court shall reduce the liquidated damages . . . to a maximum of one hundred dollars ($100) for each unsolicited commercial e-mail advertisement, or a maximum of one hundred thousand dollars ($100,000) per incident." (§ 17529.5, subd. (b)(2).)

b. *The CAN–SPAM Act.*

Shortly after California adopted S.B. 186, Congress enacted the CAN–SPAM Act, which, like S.B. 186, was passed " 'in response to mounting concerns associated with the rapid growth of spam e-mails.' [Citation.] The Act does 'not ban spam outright, but rather provides a code of conduct to regulate commercial e-mail messaging practices. Stated in general terms, the CAN–SPAM Act prohibits such practices as transmitting messages with "deceptive subject headings" or "header information that is materially false or materially misleading." [Citation.] The Act also imposes requirements regarding

7

content, format, and labeling.  For instance, unsolicited e-mail messages must include the sender's physical postal address, indicate they are advertisements or solicitations, and notify recipients of their ability to decline further mailings.  [Citation].'  [Citation.]" (*Hypertouch, supra*, 192 Cal.App.4th at p. 823.)

The CAN–SPAM Act "includes a provision that expressly preempts state statutes that regulate the use of commercial e-mail 'except to the extent that any such statute . . . prohibits falsity or deception in any portion of a commercial [e-mail].' (15 U.S.C. § 7707(b)(1).)  The preemption clause reflects one of the primary goals of the CAN–SPAM Act:  to regulate commercial electronic mail 'on a nationwide basis.' (15 U.S.C. § 7701(b)(1).)  As stated in the congressional findings accompanying the Act, the federal statute was intended . . . 'to implement "one national standard" [citation]' regarding the content of commercial e-mail because 'the patchwork of state laws had proven ineffective.'  [Citation.]" (*Hypertouch, supra*, 192 Cal.App.4th at p. 824.)

3. *The Kleffman decision.*

In *Kleffman*, the California Supreme Court addressed "the scope of section 17529.5(a)(2), which makes it 'unlawful . . . to advertise in a commercial e-mail advertisement' that 'contains or is accompanied by *falsified, misrepresented, or forged header information*.' " (*Kleffman, supra*, 49 Cal.4th at pp. 339-340, italics added.)

In *Kleffman*, as in the instant case, the plaintiff sued under section 17529.5(a)(2), alleging Vonage, by and through its marketing agents, sent him 11 unsolicited email advertisements for its broadband telephone services using "11 different domain names: superhugeterm.com; formycompanysite.com; ursunrchcntr.com; urgrtquirkz.com; countryfolkgospel.com; lowdirectsme.com; yearnfrmore.com; openwrldkidz.com; ourgossipfrom.com; specialdlvrguide.com; and struggletailssite.com.'  These '11 different domain names [could] [all] be traced to a single physical address' in Nevada where Vonage's marketing agent 'is located.'  'None of these domain names provides any indication to the recipient (or its spam filter) that the advertisement is from Vonage.' Vonage's 'use of these multiple domain names . . . reduces the likelihood that an internet service provider [ISP] will identify these . . . advertisements as spam and block them

8

before they reach the email inboxes of [plaintiff] and class members.' " (*Kleffman, supra*, 49 Cal.4th at p. 338.)

The discrete issue addressed by the Supreme Court in *Kleffman* was whether sending unsolicited commercial email advertisements from multiple domain names for the purpose of bypassing spam filters constitute falsified, misrepresented, or forged header information within the meaning of section 17529.5, subdivision (a)(2). (*Kleffman, supra*, 49 Cal.4th at pp. 337, 339.) *Kleffman* concluded the use of multiple domain names for the purposes of bypassing spam filters does not violate the statute.

At the outset of its analysis, *Kleffman* noted there was no dispute the domain names used in the challenged emails "actually exist and are technically accurate, literally correct, *and fully traceable to Vonage's marketing agents*,"[5] and the emails therefore "neither contained nor were accompanied by '*falsified . . . or forged* header information' within the meaning of section 17529.5(a)(2)." (*Kleffman, supra,* 49 Cal.4th at p. 340, italics added.) The parties agreed the issue was whether the emails contained or were accompanied by " '*misrepresented . . .* header information' " within the meaning of that subdivision. (*Kleffman, supra*, at p. 340, italics added.) The plaintiff argued the domain names, while not actually false, were "misrepresented" because their random, garbled, and nonsensical nature created a misleading or deceptive impression the emails were all from different entities when in fact they were all from Vonage via a single marketing agent. (*Id*. at pp. 341-342.)

Based on a close reading of the text and legislative history of the statutory language in issue, the Supreme Court rejected the plaintiff's argument the word "misrepresented" in section 17529.5, subdivision (a)(2) means " 'misleading' " or " 'likely to mislead.' " (*Kleffman, supra*, 49 Cal.4th at pp. 342-345.) The court found the Legislature did not intend subdivision (a)(2) "generally to prohibit the use of multiple

---

[5]    We make the observation that a typical recipient of email would not attempt to search the WHOIS database for the sender's identity before deciding whether to open an email. Be that as it may, this court is not writing on a clean slate in this area.

9

domain names." (*Kleffman, supra*, at p. 345.) Thus, as the plaintiff in *Kleffman* conceded, the mere use of multiple domain names did not " 'in and of itself' " violate subdivision (a)(2). (*Kleffman*, *supra*, at p. 345.)

Kleffman* further found the use of a domain name in a single email that "does not make clear the identity of either the sender or the merchant-advertiser on whose behalf the e-mail advertisement is sent" is not prohibited by section 17529.5, subdivision (a)(2). (*Kleffman, supra*, 49 Cal.4th at p. 345.) *Kleffman* determined such use does not in fact make any representation, express or implied, regarding the email's source. (*Id*. at pp. 345-346.) *Kleffman* also concluded that construing the statute otherwise would raise a substantial question with regard to federal preemption. (*Kleffman*, *supra*, at p. 346.)

While expressly declining to define the full scope of the statutory phrase " 'misrepresented . . . header information,' " *Kleffman* concluded: "[A] single e-mail with an accurate and traceable domain name neither contains nor is accompanied by 'misrepresented . . . header information' within the meaning of section 17529.5(a)(2) merely because its domain name is . . . 'random,' 'varied,' 'garbled,' and 'nonsensical' when viewed in conjunction with domain names used in other e-mails. An e-mail with an accurate and traceable domain name makes no *affirmative* representation or statement of fact that is false . . . [and] . . . cannot reasonably be understood to be an implied assertion that the source of that e-mail is different from the source of another e-mail containing a different domain name." (*Kleffman, supra*, 49 Cal.4th at pp. 346-347 & fn. 11.)

10

4. *Irrespective of the allegedly untraceable domain names herein, the identity of the sender was readily ascertainable from the body of the emails; therefore, Plaintiffs failed to state a cause of action against Bosley for misrepresented header information under section 17529.5, subdivision (a)(2).*

The instant case presents a different factual scenario from the one addressed by the Supreme Court in *Kleffman* in a critical respect. In *Kleffman*, it was undisputed "the domain names used to send Vonage's e-mail advertisements, and reflected in the header information of these e-mail advertisements, actually exist and are technically accurate, literally correct, and fully traceable to Vonage's marketing agents." (*Kleffman, supra,* 49 Cal.4th at p. 340.)

Here, in contrast, Bosley used domain names ("hair loss solution", "hair loss solution@yahoo.com", "hair restoration", "RestoreYourHair" and "restore your hair") which were *not traceable* to Bosley. On demurrer, accepting these properly pleaded facts as true (*Czajkowski v. Haskell & White, LLP* (2012) 208 Cal.App.4th 166, 173), Plaintiffs alleged said names "are not names of existing companies or persons, there are no such entities or persons, and no such entities or persons are registered as fictitious business names." Further, the purported senders "were not the people or entities advertising in the emails. The domains from which these emails originated were not traceable to [Bosley]. A WHOIS search would not identify [Bosley] as the registrant of the domains from which the emails originated."

The *Kleffman* court did not specify what is meant by a traceable domain name. It simply stated all 11 emails at issue could be "traced" to a single physical address in Nevada where Vonage's marketing agent was located. (*Kleffman, supra*, 49 Cal.4th at p. 338.) There, it was undisputed "the domain names used to send Vonage's e-mail advertisements, and reflected in the header information of these e-mail advertisements, actually exist[ed] and [were] technically accurate, literally correct, and fully traceable to Vonage's marketing agents." (*Id.* at p. 340.)

11

a.  *The <u>Balsam</u> decision.*

Unlike *Kleffman*, where all of the domain names were accurate and traceable to the sender, in *Balsam, supra,* 203 Cal.App.4th 1083, "the domain names were *not* traceable to the actual sender.  *The header information* [*was*] *'falsified' or 'misrepresented' because Trancos deliberately created it to prevent the recipient from identifying who actually sent the message.*  Thus, the nonsensical domain name 'misstepoutcome.com' neither disclose[d] Trancos's name nor [could] it be linked to Trancos using any public database.  While, as *Kleffman* states, an e-mail with an accurate *and traceable* domain name makes no affirmative representation or statement of fact that is false, an e-mail with a made-up *and untraceable* domain name affirmatively *and falsely* represents the sender has no connection to Trancos."  (*Balsam, supra*, 203 Cal.App.4th at p. 1098, certain italics added.)

*Balsam* concluded *Kleffman* should be "read . . . commonsensically . . . to mean that a domain name is 'traceable' to the sender if the recipient of an e-mail could ascertain the sender's identity and physical address through the use of a publicly available database such as WHOIS."  (*Balsam, supra,* 203 Cal.App.4th at p. 1098.)

*Balsam* "express[ed] no judgment about other circumstances in which (1) header information might be falsified or misrepresented for purposes of the statute, or (2) the presence of other information identifying the sender *in the body of the e-mail* could affect liability under the statute."  (*Balsam, supra,* 203 Cal.App.4th at p. 1101, fn. 17, italics added; accord *Asis Internet Services v. Subscriberbase Inc.,* No. 09-3503 SC, 2010 WL 1267763 (N.D.Cal. April 1, 2010) at p. 5 ["A finder of fact may therefore reasonably consider the body of an email or a hyperlinked page in determining whether misrepresentations in the subject lines were actually material"].)

b.  *Body of the emails was sufficient to enable recipient to identify Bosley as the sender.*

Guided by the above, we turn to the facts of the instant case.  Although the identity of the sender of the subject emails in the "from" line could not be ascertained through the use of a publicly available database such as WHOIS, the body of the emails was

12

sufficient to enable the recipient to identify Bosley as the sender. The emails on their face were advertisements for Bosley's hair restoration services. The emails provided a hyperlink to Bosley's website, and provided an unsubscribe notice as well as a physical address in Beverly Hills, California. Plaintiffs cannot plausibly allege that Bosley attempted to conceal its identity, as the clear purpose of the emails was to drive traffic to Bosley's website. The complaint concedes as much, in that it alleged if a "recipient clicks in an email's body, a link takes him to [Bosley's] website where he is encouraged to get hair transplants from [Bosley]."

Giving section 17529.5, subdivision (a)(2) a commonsense reading, as did the *Balsam* court, we conclude a header line does not misrepresent the identity of the sender merely because it does not identify the official name of the entity which sent the email, or merely because it does not identify an entity whose domain name is traceable via a database such as WHOIS, *provided* the sender's identity is readily ascertainable from the body of the email, as was the case here.

5. *Issue of federal preemption not reached*.

Because we conclude Plaintiffs failed to state sufficient facts to allege violation of section 17529.5, subdivision (a)(2) (misrepresented header information), it is unnecessary to address Bosley's argument the CAN-SPAM Act preempts Plaintiffs' claims. (See *Martin v. PacificCare of California* (2011) 198 Cal.App.4th 1390, 1409 ["Because we conclude [Health & Safety Code] section 1371.25 bars the Martins' claims, we do not reach the question whether the Medicare Act preempts the Martins' claims"].)

## DISPOSITION

The judgment of dismissal is affirmed.  Bosley shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

KITCHING, J.

ALDRICH, J.

14